LAUREN C. WOODRUFF, Respondent, v. HUGH J. JEWETT, as Receiver, etc., Appellant, and Others.

*Receiver of a corporation — a judgment should be entered against him, as receiver, and not personally — when it may be so entered after he has been discharged as receiver.*

In an action brought by the creditor of a corporation against a receiver thereof, in his official capacity, no personal judgment can be rendered against him; the judgment must be entered against him as receiver, and must be made payable out of funds held by him in that capacity.

The fact that the receiver has been discharged during the pendency of the action brought by the creditor, and has transferred all the property and assets held by him to another corporation or person, pursuant to an order of the court, does not render it improper to thereafter enter a judgment in an action against him as receiver, when it is made payable out of funds held by him, and applicable to that purpose.

APPEAL by Hugh J. Jewett, as receiver, from the final judgment entered in this action on the 22d day of July, 1884.

*E. C. Sprague,* for the appellant.

*L. N. Bangs,* for the respondent.

BARKER, J. :

In May, 1875, the appellant was appointed receiver of all the property, both real and personal, of the Erie Railway Company. He immediately entered upon the discharge of his duties, and received into his hands, as income from the property of the said corporation, large sums of money. The plaintiff presented a claim to the receiver, demanding payment of the interest accruing upon certain bonds issued by the Erie and Genesee Valley Railroad Company, in pursuance of an agreement of the Erie Railway Company with the plaintiff, made prior to the appellant's appointment. The Erie Railway Company and the receiver both denied the legality and equity of this claim, and resisted its payment. Thereupon the plaintiff made application to this court for an order directing the receiver to make such payment. The court declined to adjudicate the controversy upon motion and denied the application, but gave to the plaintiff permission to bring this action, the chief purpose of which is to establish such demand and secure its payment out of the funds in the hands of the receiver. Other relief was demanded in the complaint, but upon the trial the same was abandoned.

Upon the trial of the issues at the Special Term, the court held, as a conclusion of law upon the facts found, that the defendant therein, Hugh J. Jewett, as receiver, pay into the Metropolitan National Bank, in the city of New York, the interest due upon the mortgage bonds of the Erie and Genesee Valley Railroad Company maturing on the 8th day of July, 1875, and thereafter maturing during the period he operated said railroad, being until the 24th of April, 1878, from any funds which he had received or were in his hands applicable to the payment thereof; and upon this decision an interlocutory judgment was entered, the decretal part of which is as follows : " It is decreed that the defendant, Hugh J. Jewett, as receiver of the Erie Railway Company, under the several orders appointing him such receiver, pay into the Metropolitan National Bank of the city of New York, the interest due and unpaid upon the mortgage bonds of the Erie and Genesee Valley Railroad Company, maturing on the 1st day of July, 1875, and thereafter maturing while he operated the Erie and Genesee Valley Railroad Company, being until the 24th day of April, 1878, with interest on the coupons

attached to said bonds during the period last aforesaid from the time they respectively become due, until the time of the judgment in this action, from any funds which he received or which were in his hands as such receiver at the time of such sale of the Erie Railway Company, under the foreclosure aforesaid, applicable to the payment thereof, with the costs of this action." A provision was made in this judgment for a reference, for the purpose of ascertaining the amount of interest due and unpaid upon the bonds and to take an account of the moneys received and disbursed by the said receiver during his receivership, or of any in his hands at the expiration of his office as such receiver, and report the testimony taken by him to this court with his opinion thereon, to the end that a final decree might be entered. This judgment was affirmed in the Court of Appeals and the judgment of that court made the judgment of this court on the 15th day of January, 1884. Thereupon a reference was ordered for the purpose of ascertaining the facts necessary to enter final judgment, and the referee having been attended by the plaintiff and Hugh J. Jewett, in his capacity as receiver, made his report, which was in all things confirmed, and final judgment entered on the 27th of July, 1884, and after reciting the provisions of the interlocutory judgment, and the subsequent proceedings had thereon, and the making such confirmation of the referee's report, it contained this direction: "That the plaintiff Lauren C. Woodruff have final judgment, that the defendant, Hugh J. Jewett, as receiver of the Erie Railway Company, forthwith pay into the Metropolitan National Bank of the city of New York the sum of $37,822.45, with interest on that sum from the 22d day of July, 1884, until the time such payment should be made as herein directed. And it is further adjudged, that the said Lauren C. Woodruff have judgment in this action for costs and disbursements therein as against the said Hugh J. Jewett as receiver of the Erie Railway Company, for the sum of $1,502.96 as allowed and taxed in this action, and that said receiver, Hugh J. Jewett, forthwith pay the sum last aforesaid to the attorney for the plaintiff with interest thereon from July 22, 1884, to the time of such payment." From this judgment Hugh J. Jewett, as receiver, alone appeals.

We conceive that two questions are presented for our considera-

tion on this appeal, and no more. First. Is the final judgment a personal judgment against Hugh J. Jewett, and can payment of the same be enforced out of his private estate? The learned counsel for Mr. Jewett is apprehensive that it may bear such a construction, and for that reason presents the question for our consideration, and if, on this appeal, we shall be of that opinion, then the judgment should be modified, limiting its effect and operation as establishing a lien upon the assets which belong to the Erie Railway Company, and as containing a direction to the appellant, in his capacity as receiver, to pay the same.

In our consideration the judgment is in no sense a personal judgment against Mr. Jewett. He is made a party solely and distinctly, as the receiver of the Erie Railway Company, and he appeared and answered as such, and from first to last, all the proceedings have been conducted, as against him, wholly in his representative capacity and not otherwise. In an action brought against a receiver in his official capacity, a judgment can only be obtained against him as receiver, and must be made payable out of the funds in his hands as receiver, and his liability is in no sense a personal one. It is a principal of law of universal application, and is at the foundation of every system of enlightened jurisprudence, that no person shall be affected by the judgment of any court, unless he has had his day in court and been granted an opportunity to be heard in his own behalf. The court had no jurisdiction over Mr. Jewett, individually, and no power to render any judgment against him personally. (*Fisher* v. *Hubbell*, 1 T. & C., S. C. R., 97; High on Receivers, §§ 255, 395.)

It is now the settled doctrine that the receiver of an insolvent corporation represents the corporation, the shareholders and its creditors of every class. The assets of the corporation are *custodia legis*, the receiver's possession being the possession of the court, and he in every authorized act represents the court, and can make no rightful disposition of any of the funds in his hands without the order of the court. (*Attorney General* v. *Guardian Mut. Life Insurance Company*, 77 N. Y., 272; *Davis* v. *Gray*, 16 Wall. [U. S.], 203.)

If it was intended by the interlocutory or final judgment to enter the same as a personal judgment against Mr. Jewett and to bind his estate, the court was without authority to render the same, and the

same should be modified so as to limit its effect as against the appellant as receiver. We, however, are of the opinion that it is not susceptible of a construction making it a personal judgment as to any of its provisions, but, as our decision in this respect is not final and may be reviewed, we deem it a proper precaution to change the language of the decree in some of its parts, and particularly in respect to the payment of the costs.

*Second.* The appellant further claims that, as it appears by the record of the judgment from which he appeals that before the entry of the final judgment he was fully discharged as receiver, and all the funds which came to his hands had been paid out by him under and in pursuance to the order of this court, the judgment should be reversed as to the receiver.

If the conclusions which we have reached upon the first proposition are correct, we are unable to perceive how the appellant is aggrieved by the judgment or can be legitimately interested in securing its reversal, as no question can now be raised on the merits. We may assume, in considering the question whether judgment should be reversed or not, that the appellant's position is true, that he was duly discharged by an order of this court after disbursing, in a proper manner, all the funds which came to his hands. The action is in the nature of proceedings *in rem.* to reach moneys in the hands of the receiver, subject to the order of the court, and the decree contained no other provisions. The plaintiff's right to share in the distribution of the fund survives the discharge of the receiver. The plaintiff should not be deprived of the benefit of this prolonged and expensive litigation, because the receiver has been discharged since the entry of the interlocutory judgment. The plaintiff's rights are not in the least changed or abridged because of his removal. At the most the entry of the interlocutory judgment in form against Mr. Jewett, as receiver, is a mere irregularity. It can be enforced as it was intended to be by payment out of the funds, subject to the order of the court, applicable to the purpose. When the receiver was removed this action was *sub judice*, and as the proceedings are in no sense *in personam*, the court possessed the inherent power to order the judgment to be entered in form against Mr. Jewett, as receiver, so that the plaintiff would not lose the benefit of the decree to which he was entitled at the time the receiver was

discharged. The final judgment is in strict conformity to the directions of the interlocutory judgment, and it can work no possible injury to any one by sustaining the practice adopted.

In the common-law courts, before any statute was enacted upon the subject, it was the practice to allow judgments to be entered against the defendant, rendered after his death, if the same occurred after the commencement of the term at which the trial took place. (*Jacobs* v. *Miniconi*, 7 Term Rep., 31.) The same practice was permitted in this State. (Burrell's Practice [vol. 1], p. 281.) Now, by section 763 of the Code, if either party to the action dies after verdict, report or decision, or interlocutory judgment, but before final judgment is entered, the court must enter final judgment in the name of the original parties, unless the verdict or interlocutory judgment is set aside.

The case of *Harrison* v. *Simons* (3 Edw. Ch., 394) is somewhat in point. There the death took place before the enrollment of the decree. The court held that the death did not prevent the enrollment, and that the execution of the decree might take place, and denied the plaintiff's application to revive as unnecessary. (See, also, *Hays* v. *Thomae*, 56 N. Y., 521.)

The practice pursued in this case may be sanctioned, as there is no statute prohibiting it, and no injustice can be done to any interested party by allowing the judgment to stand. In *Miller* v. *Loeb* (64 Barb., 454), permission was given by the court to sue the receiver after his discharge, upon the ground that the claimant had no notice of his discharge; but the court declined, in granting the order, to pass upon the question of the regularity of the discharge. It is not new practice to order the discharge of a receiver before settlement of all claims made upon the fund in his hands, and directing the undisbursed .assets to be handed over to the corporation which would be entitled thereto, after paying all just claims thereon, exacting ample security for the payment of all demands thereafter established. (*Milwaukee and Minn R. R. Co.* v. *Soutter*, 2 Wall. [U. S.], 510.)

It would seem that the plaintiff has been fully protected in the payment of his claim, notwithstanding the discharge of the receiver, for in the judgment of foreclosure under which the property of the Erie railroad was sold and conveyed, a provision was inserted

declaring that the purchaser at such sale should be required to take title to the mortgaged property, subject to all lawful contracts and indebtedness of the receiver, all of which were declared to be prior liens upon the mortgaged property, and which the purchasers were required to assume; and in the order of the court, made after the sale, directing the receiver to transfer, deliver and surrender to the new corporation, the New York, Lake Erie and Western Railroad Company, all the property and franchises possessed by the receiver, a provision to this effect is inserted, subject, however, to the reservations specified in the decree of foreclosure, and that upon such transfer the receiver be discharged of all liability for the property and franchises so delivered and transferred to the new company. (*Farmers' Loan and Trust Co.* v. *Central R. Co. of Iowa*, 2 McCrary, 181.)

But we do not intend, at this time, as the questions are not properly before us, to express any opinion upon the many legal propositions which may arise in suits or proceedings which the plaintiff may hereafter institute for the purpose of enforcing the satisfaction of his judgment. In particular we reserve all consideration of the question whether Mr. Jewett is in contempt for having paid over to the new corporation on the 5th day of December, 1879, the sum of $43,323.37, which was done in pursuance of an order of this court, entered in the action appointing him receiver; nor whether the court has the power to reclaim, for the purpose of paying the plaintiff's demand, in full or in part, any of the money distributed and paid over on previous orders.

The judgment should be so modified that it will, in terms, be in strict compliance with the provisions of the interlocutory judgment, and distinctly contain the provision, "that the receiver pay the plaintiffs' judgment out of any funds which are, or may hereafter come into his hands, or under the direction of the court, applicable to that purpose."

Judgment as modified affirmed with costs.

BRADLEY, J., concurred; SMITH, P. J., not voting; HAIGHT, J., not sitting.

Judgment modified, as indicated in the opinion, and as modified affirmed, with costs to the respondent; judgment to be settled by BARKER, J.